# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| THE RECEIVERSHIP ESTATE OF AUDIENCESCIENCE INC. and REVITALIZATION PARTNERS, L.L.C., *As General Receiver for the Receivership Estate of AudienceScience Inc.*, | § § § § § | CASE NO. 6:21-cv-01209-ADA<br><br>JURY TRIAL DEMANDED |
| *Plaintiffs*, | § § § | |
| v. | § § | |
| GOOGLE LLC and YOUTUBE, LLC, | § § § | |
| *Defendants*. | § § § | |

**DEFENDANTS' OPPOSED MOTION TO TRANSFER VENUE
UNDER 28 U.S.C. § 1404(A)**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 2

    A.  Plaintiffs have no ties to this District. ................................................. 2

    B.  Defendants' relevant witnesses and documents are in the NDCA. ...... 2

    C.  No known third-party witnesses are located in this District, but relevant parties reside in or nearer to the NDCA. ................................ 4

III.  LEGAL STANDARD ......................................................................................... 4

IV.  ARGUMENT ...................................................................................................... 5

    A.  This case could have been filed in the NDCA. ................................... 5

    B.  The private interest factors all favor transfer. .................................... 6

        1.  The cost of attendance for willing witnesses favors transfer. ................... 6

        2.  The relative ease of access to sources of proof favors transfer ................ 9

        3.  The availability of compulsory process to secure the attendance of witnesses favors transfer. ......................... 10

        4.  The practical problems that make trial of a case easy, expeditious, and inexpensive are neutral ......................... 11

    C.  The public interest factors also favor transfer. .................................. 11

        1.  Administrative difficulties flowing from court congestion are neutral. ................................ 11

        2.  Local interest favors transfer. ......................... 12

        3.  The Court's familiarity with the law and the avoidance of conflicts concerning the application of foreign law factors are neutral. ................ 13

    D.  The Western District of Washington also presents a clearly more convenient forum for this case than this District. ............................... 13

V.  CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)..................................................................8, 12

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)..................................................................9, 12

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ................................12

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) ................................11

*Cub Club Inv. LLC v. Apple, Inc.*,
No. 6:20-cv-000856-ADA, Dkt. 28 (W.D. Tex. Sept 7, 2021) ............................10

*In re Dish Network L.L.C.*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)............................11, 15

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)..................................................................6, 9, 12

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ........................ *passim*

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021)....................................12

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ................................9

*In re HP Inc.*,
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ................................7

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ................................7, 12, 13

*L2 Mobile Techs. LLC v. Google LLC*,
No. 6:21-00358-ADA, Dkt. 52 (W.D. Tex. Jan. 7, 2022) ....................................10

*In re Netflix, Inc.*,
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ................................7

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)................................5

*Parus Holdings Inc. v. LG Elecs. Inc.*,
    No. 6:19-cv-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ...........................10

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ...........................................................................................12

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .............................................................................................9

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ...............................................................................4, 5, 8, 12

*Wet Sounds, Inc. v. Audio Formz, LLC*,
    No. A-17-cv-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017).................................9

**Statutes**

28 U.S.C. § 1400(b) ..................................................................................................................5, 14

28 U.S.C. § 1404(a) ...........................................................................................................1, 4, 7, 15

## I.      INTRODUCTION

Defendants Google LLC ("Google") and YouTube, LLC ("YouTube") hereby respectfully and timely[1] move to transfer venue to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). Plaintiffs The Receivership Estate of AudienceScience Inc. and Revitalization Partners, L.L.C. (collectively, "Plaintiffs" or "AudienceScience") accuse Google and YouTube of patent infringement regarding selecting an advertising message for inclusion on a webpage. Both Google and YouTube are headquartered and maintain their principal places of business in the NDCA, where the accused products were developed and are maintained and where most relevant witnesses live and work. Every factor of the transfer analysis weighs in favor of transferring this case to the NDCA or is neutral; none favor keeping the case in this District. Because the NDCA presents a much more convenient venue for this case, transfer is warranted. Based on the factors of the transfer analysis, the NDCA is the most convenient forum for this litigation. Alternatively, the Western District of Washington ("WDWA") is also a more convenient forum because it is where Plaintiffs are located and where, besides the NDCA, the most relevant witnesses are located.

---

[1] Because this case was filed prior to March 7, 2022, the deadline for filing this motion to transfer venue is governed by the Second Amended Standing Order Regarding Motions for Inter-District Transfer (the "Second Amended Transfer Motion Order"). *See* March 7, 2022 Standing Order Governing Proceedings (OGP) 4.0–Patent Cases at 4. The Second Amended Transfer Motion Order states that a "motion for inter-district transfer may be filed within eight weeks of the scheduled date for the Markman hearing only with a showing of good cause for any delay and leave of court," but does not require a showing of good cause and leave of court for transfer motions filed more than eight weeks prior to the scheduled Markman hearing date. Here, because the Markman hearing is scheduled for August 25, 2022 (Dkt. 45 at 3), no showing of good cause and leave of court is necessary under the Second Amended Transfer Motion Order.

## II.     STATEMENT OF FACTS

### A.     Plaintiffs have no ties to this District.

Neither plaintiff has any claims or any connection to this District. AudienceScience is the estate of a Washington state corporation with a principal place of business in Seattle. Compl., Dkt. 1, ¶ 2. Revitalization Partners is also organized and headquartered in Washington with a principal place of business in Seattle. *Id.* ¶ 3.

### B.     Defendants' relevant witnesses and documents are in the NDCA.

Google's Mountain View headquarters, which includes offices in neighboring Sunnyvale, (collectively referred to as "Mountain View") is the strategic center of Google's business. Decl. of Google Senior Legal Project Manager ("Project Manager Decl.") ¶ 3. As of October 2021, the Mountain View headquarters employed approximately ███ employees, which is approximately ███ of Google's U.S. employees. *Id.* As of October 2021, Google also had approximately ███ other employees in offices in San Francisco, California and other smaller offices also within the NDCA. *Id.* As of October 2021, approximately ███ of Google's ███ total U.S. employees, including engineers, product managers, marketers, executives, and staff were employed out of Google's offices located in the NDCA. *Id.* Although Google has an office in Austin, Texas, as of October 2021 it housed only ███ of Google's U.S. employees. *Id.* ¶ 4. Google Fiber Texas, which is not accused in this case, has one office in San Antonio, Texas. That office had just ███ employees as of October 2021. *Id.*

YouTube was founded in San Mateo, California in 2005. *Id.* ¶ 5. In 2006, YouTube moved to a headquarters in San Bruno, California, where it has remained ever since. *Id.* Its principal place of business is located at 901 Cherry Avenue, San Bruno, California 94066. *Id.*

Plaintiffs accuse Google and YouTube of "selecting an advertising message (including display ads) for inclusion in a requested web page (including YouTube, YouTube Music, and

██████████████

Gmail web pages and apps) (the 'Accused Products')." Ex. 1.[2] Based on a detailed investigation,

Defendants have identified the following employees who have relevant knowledge of the accused

functionalities in the Accused Products, most of whom are based in the NDCA:

- ████████████, based in San Bruno, California, is ████████████ knowledgeable about YouTube Ads, including ad formats and monetization of new experiences on YouTube ads;

- ████████, based in Palo Alto, California, is ████████████ knowledgeable about YouTube Ads, including creative selection, optimization, and YouTube Discovery Ads;

- ████████, based in Palo Alto, California, is ████████████ knowledgeable about ad targeting, including targeting for YouTube and Gmail Ads;

- ████████, based in Kirkland, Washington, is ████████████ knowledgeable about the implementation of ad targeting for Google products, including YouTube and Gmail Ads;

- ████████████, based in Palo Alto, California, is ████████████ knowledgeable about YouTube Ads machine learning models; and

- ████████, based in Mountain View, California, is ████████████ knowledgeable about ad targeting, selection, and display for Gmail Ads.

Project Manager Decl. ¶ 8. These employees design, develop, implement, and maintain the accused

functionalities in the Accused Products. No team members for any of the employees identified

above are based in Google's Texas offices. *Id.* One member of ████████ team is located in

Austin, Texas; however, he is not based in Google's Austin office, instead works remotely from

his home and possesses no unique, non-cumulative knowledge about the accused functionalities

in the Accused Products. *Id.* Furthermore, to the extent Google's licensing practices are relevant

to this case, Google's licensing witness is also located in NDCA. *Id.* ¶ 9. In short, nearly all

individuals that Defendants expect will be witnesses on the accused functionalities in this case are

---

[2] Unless otherwise stated, all exhibits referenced herein are attached to the Declaration of Robert W. Unikel ("Unikel Decl.").

based in NDCA. *Id.* ¶¶ 8–9. In contrast, neither Defendants nor AudienceScience have identified any potential witnesses in Texas who have relevant, non-cumulative knowledge regarding the accused functionalities in the Accused Products.

As a matter of practice, documents about Defendants' products and services are created and maintained by the employees working on those products and services. *Id.* ¶ 6.

### C. No known third-party witnesses are located in this District, but relevant parties reside in or nearer to the NDCA.

The two named inventors for the asserted U.S. Patent Nos. 7,747,676; 7,882,175; and 8,082,298 (collectively, the "Asserted Patents") are Basem Nayfeh and Andrew Chen. Exs. 2–4. Basem Nayfeh appears to currently reside in the Seattle, Washington area, although he is currently the Director of Engineering at Cisco, which is headquartered in the NDCA in San Jose, California. Ex. 5. Andrew Chen appears to currently reside in the San Francisco Bay Area, which is also in the NDCA. Ex. 6. Several of the patent prosecuting attorneys appear to reside in the Seattle, Washington area, including Steven D. Lawrenz, Judy Kadoura, John Wechkin, and Maurice Pirio. Exs. 7–11. The original assignee of U.S. Patent No. 7,747,676 was Revenue Science, Inc., which was the original name of AudienceScience. Ex. 12. AudienceScience has been the only assignee of the other Asserted Patents, aside from security interests. Exs. 13–14.

## III. LEGAL STANDARD

To evaluate transfer under Section 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") (citation omitted). If so, the court weighs eight private and public interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical

problems that make trial of a case easy, expeditious and inexpensive.
. . . [5] the administrative difficulties flowing from court congestion;
[6] the local interest in having localized interest decided at home;
[7] the familiarity of the forum with the law that will govern the
case; and [8] the avoidance of unnecessary problems of conflict of
laws [or in] the application of foreign law.

*Id*. at 315 (internal citation omitted). "[I]n a case featuring most witnesses and evidence closer to

the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff,

the trial court should grant a motion to transfer." *See In re Nintendo Co*., 589 F.3d 1194, 1198

(Fed. Cir. 2009) (citation omitted).

## IV.    ARGUMENT

The applicable factors weigh persuasively in favor of transferring this case to the NDCA.

Nearly all of the relevant witnesses and evidence related to the accused products and functionality

are located in the NDCA. No known witnesses reside in this District. And Plaintiffs have no

meaningful connection to this District. In short, the private and public interest factors either favor

transfer or are neutral and, on balance, make the NDCA a clearly more convenient venue for this

case. This is equally true for both Defendants because the allegations against Google and YouTube

are indistinguishable. Although the NDCA would be the most convenient forum for this litigation

based on the factors discussed below, the WDWA is also a clearly more convenient forum than

this District.

### A.    This case could have been filed in the NDCA.

The threshold requirement for a transfer of venue is met here: AudienceScience could

have brought this action in the NDCA, where Google and YouTube are both headquartered. *See*

28 U.S.C. § 1400(b).

**B.     The private interest factors all favor transfer.**

**1.     The cost of attendance for willing witnesses favors transfer.**

"The convenience of the witnesses is probably the single most important factor in [the] transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (citation omitted). The convenience of the expected witnesses for participating in this case shows that this dispute belongs in the NDCA. Nearly all willing witnesses reside in the NDCA, whereas *none* are in this District. Here, there are multiple witnesses in the NDCA and *no* expected witnesses in this District.

Google and YouTube's respective headquarters have been in the NDCA since their foundings in 1998 and 2005. Project Manager Decl. ¶¶ 2, 5. Nearly all of the identified relevant employees with technical knowledge related to the accused functionalities are based in the NDCA. *Id*. ¶ 8. As detailed in Defendants' supporting declaration, these individuals have direct experience with the accused functionalities of the Accused Products, and likely will have factual information about noninfringement and damages in this case. *Id.* Together ███████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████ are knowledgeable about Google's technology for the formatting, selection, targeting, and machine learning models for YouTube Ads. *Id.* Furthermore, ██████████████████████████████████████ ████████ together are knowledgeable about Google's technology for ad targeting, selection, and display for Gmail Ads. *Id.* Collectively the knowledge of these six individuals encompasses key aspects of the accused functionalities of the Accused Products. *See id.* Each individual is located in the NDCA except ██████████, who is located in the WDWA. *Id.* However, about two-thirds of ██████████ team, amounting to about ████ people, are located in the NDCA. *Id.* For the remaining identified witnesses, the vast majority of their teams are also located in the NDCA, and no member is located in this District. "While it is true that the witnesses in the Northern District

of California are largely affiliated with [Google], that does not negate the inconvenience and cost to those individuals to travel a significant distance to testify." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

Google has Austin and San Antonio offices, but no expected witnesses are based there. Project Manager Decl. ¶¶ 4, 8–9. A party's presence in the transferor district does not affect the assessment of this factor if that presence is not relevant to the case. *See, e.g.*, *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *1–2 (Fed. Cir. Sept. 25, 2018) (finding transfer to the NDCA appropriate even though defendant "maintain[ed] an office" within the transferor district). Accordingly, Google's presence in the District does not affect transfer because that presence is irrelevant to the patent infringement allegations in this case. Conversely, Plaintiffs have no relevant witnesses, offices, or other contacts in this District or elsewhere in Texas, bolstering the NDCA's relative convenience for this case's willing witnesses. Indeed, the fact that neither party has identified any expected witnesses in this District, or within Texas at all, presents an even stronger case for transfer than those where a party witness was located in this District. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (ordering transfer to the NDCA where defendant identified eleven potential party witnesses in the NDCA and plaintiff identified only one party witness in this District); *see also In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022) (ordering transfer to the NDCA where defendant identified twenty-one potential party witnesses in the district and noted their relevance to the accused technology, whereas plaintiff identified only seven party witnesses in the transferor district and did not elaborate on their relevance) (non-precedential).

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct

relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (citation omitted). "It is an 'obvious conclusion' that it is more convenient for witnesses to testify at home." *Id*. Distant witnesses "not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id*.

Here, both the time and the distance the witnesses would need to travel favor transfer. At this point, all identified potential witnesses—including the inventors and Plaintiffs' representatives—would have to undertake significant travel by plane and car to testify. *See In re Google LLC*, 2021 WL 4427899, at *4 (considering that "[t]here is no major airport in the Waco Division of the Western District of Texas . . ."). Specifically, all but one of the identified affected witnesses (even if willing witnesses) must travel about 1,400 miles from California to Waco, Texas to testify, resulting in costly and unnecessary travel expenses, missed work, and personal disruptions. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). None of Defendants' expected witnesses who may have relevant information are located closer to Waco. Project Manager Decl. ¶¶ 8–9. Potential witnesses based in or near Seattle, including ████████, would have to travel about 2,000 miles to Waco, Texas. Traveling from the Seattle area to the NDCA is far more convenient for ████████, Plaintiffs' witnesses, and named inventor Basem Nayfeh because there are several daily direct flights from Seattle to San Francisco, Oakland, and San Jose. In contrast, there are no direct flights from Seattle to Waco. Transferring to the NDCA would even be more convenient for Plaintiffs' counsel, based in Burlingame, California in the NDCA. Ex. 15.

Litigating this case in the San Francisco Bay Area would allow most of the witnesses to commute to trial or hearings from home or work within the same day. "[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home

or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-cv-141-LY, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017) (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)).

Because nearly all of the expected relevant witnesses reside within the NDCA, one such witness resides much closer to the NDCA than this District, and no expected witnesses reside in or closer to this District, this most important factor decisively favors transfer. "[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer." *In re Google LLC*, 2021 WL 4427899, at *4.

### 2. The relative ease of access to sources of proof favors transfer.

Sources of proof for this case are far more accessible in the NDCA than in this District. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *Genentech*, 566 F.3d at 1345). Documents about Google's products and services that are in Google's possession are normally created and maintained by the employees working on those products and services. Project Manager Decl. ¶ 6. As discussed above, Defendants have identified employees with knowledge relevant to this litigation who are mostly located in the NDCA. *Id.* ¶¶ 8–9. None of those employees are located in this District. *Id.* The identified employees created and maintain documents relevant to the accused functionalities in the Accused Products where they work. These employees are the custodians who maintain Defendants' documents relevant to this litigation. Thus, the document custodians relevant to this litigation are primarily located in the NDCA. *See In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (stating the district court erred by "analyzing only the location of servers where documents are

stored, rather than also considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval."); *In re Google LLC*, 2021 WL 4427899, at *6. This favors transfer. *L2 Mobile Techs. LLC v. Google LLC*, No. 6:21-00358-ADA, Dkt. 52 at 6 (W.D. Tex. Jan. 7, 2022) ("[T]his Court will follow the Federal Circuit's lead and weigh the evidence created and maintained by NDCA-based Google personnel in favor of transfer.").

Defendants are unaware of any relevant evidence related to AudienceScience or third parties that exist in Texas, much less this District. As outlined in the Project Manager Declaration, nearly all of the expected witnesses who work on the accused functionality of the Accused Products are in the NDCA, where related documents are also created and maintained. This factor thus favors transfer. *See Cub Club Inv. LLC v. Apple, Inc.*, No. 6:20-cv-000856-ADA, Dkt. 28 at 6 (W.D. Tex. Sept 7, 2021) (favoring transfer when finding "(1) that [Google] resides in the NDCA and (2) that the accused features were apparently developed at [Google's] offices in California . . ."). In fact, this Court previously found that the relative ease of access to Google's sources of proof favored transferring another case to the NDCA because the allegedly infringing component of the accused product was designed and developed there. *See Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-00432-ADA, 2020 WL 4905809, at *3 (W.D. Tex. Aug. 20, 2020) (granting transfer where "Google researches, designs, develops, and tests Google Assistant in NDCA" and "LG integrates Google Assistant into its Android products in NDCA"). The same underlying analysis applies here.

### 3. The availability of compulsory process to secure the attendance of witnesses favors transfer.

"This factor 'weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.'" *L2 Mobile*, No. 6:21-cv-00358-

ADA, Dkt. 52 at 10 (quoting *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014)). Andrew Chen, one of two named inventors on the Asserted Patents, appears to reside in the San Francisco Bay Area. Ex. 6. It is unknown whether Andrew Chen would be a willing participant; accordingly, he is presumed to be unwilling and considered under this factor. *In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021). In contrast, there are no identified unwilling witnesses that reside in this District. This factor therefore favors transfer.

Furthermore, although Defendants are still investigating potential prior art to the Asserted Patents and developing their invalidity contentions, due April 21, 2022, it may be that relevant prior artists are located in or near the transferee district or elsewhere. Indeed, to date, no prior artists located in this District have been identified. *See In re Google LLC*, 2021 WL 4427899, at *1, 6–7 (finding that weight should be given to the location of Google's prior art witnesses, noting Google's history in "several previous cases in which it had called such witnesses to testify during trial").

4.    **The practical problems that make trial of a case easy, expeditious, and inexpensive are neutral.**

Considerations of judicial economy are neutral. Besides Defendants Google and YouTube, who currently seek transfer to the NDCA, there are no other defendants in this case. No other cases regarding the three Asserted Patents have been filed previously, either in this District or any other.

C.    **The public interest factors also favor transfer.**

1.    **Administrative difficulties flowing from court congestion are neutral.**

The issue of court congestion is neutral. First, according to the U.S. District Court Judicial Caseload Profile, in the 12-month period ending on September 30, 2021, the median times to trial in the two districts are roughly the same (about 23.9 months in this Court versus 26.4 months in the N.D. Cal.). Ex. 16. Indeed, the Federal Circuit recently "noted that 'the Western District of

Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (quoting *In re Juniper Networks*, 14 F.4th at 1322). And that may not continue to hold because this Court now has far more open patent cases (856 cases) than the entire N.D. Cal. (273 cases). Ex. 17 at 5, Ex.18 at 1. In addition, any "garden-variety delay associated with transfer is not to be taken into consideration . . . ." *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *6 (Fed. Cir. Oct. 6, 2021) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013)).

Second, even assuming a slightly faster time to trial in this District, that does not meaningfully impact the transfer analysis because "this factor appears to be the most speculative." *Genentech*, 566 F.3d at 1347. As the Federal Circuit has observed, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. When, as here, "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.* at 1344 n.5 (quoting *Genentech*, 566 F.3d at 1347).

**2.      Local interest favors transfer.**

The NDCA has a strong local interest in this dispute: Google and YouTube were founded and continue to maintain their respective headquarters in the NDCA, Google and YouTube design, develop, implement, and maintain the Accused Products there, and most of the employees who are knowledgeable about the accused functionalities in the Accused Products are based there. Project Manager Decl. ¶ 8. This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *In re Acer*, 626 F.3d at 1256 (citation omitted); *see also Volkswagen II*, 545 F.3d at 318 (explaining that this factor pertains to a forum's "connections with the events that gave rise to th[e] suit"). The design, development, implementation, and maintenance of the accused functionalities in the Accused Products by employees in the NDCA

provides a significant connection to the NDCA in this case. Conversely, there is no meaningful connection between this litigation and this District. No identified potential witness resides in this District, or in the state of Texas for that matter. Google's WDTX offices also do not create a local interest in this case because no development or maintenance of the accused functionalities in the Accused Products takes place there. "Because the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas . . . the local interest factor should [be] weighted strongly in favor of transfer." *In re Google LLC*, 2021 WL 4427899, at *6; *see also In re Juniper Networks*, 14 F.4th at 1320–21 ("Juniper's general presence in the Western District of Texas is not enough to establish a local interest in that district comparable to that of the Northern District of California. . . . Moreover, it appears that the relationship between the Texas forum and [the plaintiff] is merely the product of pursuing litigation in a preferred forum and is entitled to little weight.").

Plaintiffs' connection to this District is nonexistent. Neither plaintiff claims to have any sort of presence in Texas. Both are Washington entities with their principal place of business in Seattle, Washington. Compl., Dkt. 1, ¶¶ 2–3. This factor therefore strongly favors transfer.

> **3.      The Court's familiarity with the law and the avoidance of conflicts concerning the application of foreign law factors are neutral.**

The courts in both forums are experienced with the issues relevant to this case, and no conflict-of-law issues are present. These factors thus are neutral.

> **D.      The Western District of Washington also presents a clearly more convenient forum for this case than this District.**

While the NDCA is the most convenient forum for this litigation to proceed for the reasons described above, the WDWA is also a clearly more convenient forum than this District. Just as for the NDCA, each factor of the transfer analysis weighs in favor of transfer from this District to the WDWA or is neutral.

The threshold requirement that this case could have been brought in the WDWA is met here. There are regular and established places of business in the WDWA where employees design, develop, and maintain the accused functionalities of the Accused Products. *See* 28 U.S.C. § 1400(b).

The cost of attendance for willing witnesses favors transfer. Plaintiffs are both located in the WDWA: AudienceScience is the estate of a Washington corporation and Revitalization Partners is an LLC located in Washington and organized under Washington state law. Compl., Dkt. 1, ¶ 2, 3. Plaintiffs' witnesses are therefore most likely located in the WDWA.

Furthermore, as discussed above, ███████ is one relevant witness knowledgeable about the implementation of ad targeting for Google products, including YouTube and Gmail, and is based in Kirkland, Washington. Project Manager Decl. ¶ 8. In addition, while two-thirds (about ███ members) of ████████ team is located in the NDCA, about one-third of ████████ team, amounting to about ████ people, is based in Kirkland, Washington. *Id.* Although transfer to the WDWA would require the other five identified employees to travel from the NDCA, the time to travel to Seattle, Washington would be hours less each way than the time required to travel to Waco, Texas. Seattle is much closer to the NDCA than Waco, and there are multiple daily direct flights.

In addition to willing witnesses, Plaintiffs' documents are presumably located in the WDWA as well. Defendants also have documents located in the WDWA: those created and maintained by ████████ and members of his team in Kirkland, Washington. The second private interest factor regarding relative ease of access to sources of proof thus favors transfer.

The availability of compulsory process to secure the attendance of third party witnesses also favors transfer. It appears the other named inventor of the Asserted Patents, Basem Nayfeh,

is located in Seattle, Washington. It appears several of the patent prosecuting attorneys are also located in the Seattle, Washington area. Because it is not known whether they will be willing participants to the litigation, they are presumed to be unwilling and considered under this factor. *See In re Dish Network L.L.C.*, 2021 WL 4911981, at *3.

Finally, the local interest factor favors transfer. As previously mentioned, Plaintiffs are the estate of a Washington corporation and a Washington LLC. The WDWA therefore has a strong interest in a case brought by two entities located there.

The remaining factors are neutral:

- The practical problems that make trial of a case easy, expeditious, and inexpensive;

- Administrative difficulties flowing from court congestion (regarding median time to trial, about 23.9 months in this Court and 21.8 months in WDWA; regarding number of open patent cases, 856 in this Court and 46 in WDWA) Exs. 16, 17, and 19;

- The Court's familiarity with the law; and

- The avoidance of conflicts concerning the application of foreign law.

Thus, several important factors favor transfer from this District to the WDWA and none weigh against transfer.

## V.     CONCLUSION

The factors under Section 1404(a) strongly favor transfer. Nearly all of Defendants' expected witnesses and documents related to the accused products and functionality are located in the NDCA. Conversely, no potential witnesses or documents are located in this District. Each private and public interest factor either favors transfer or is neutral. The Court therefore should transfer the case to the NDCA. The WDWA is also a clearly more convenient forum than this District due to Plaintiffs' location there, as well as the location of some witnesses there. Each

transfer analysis factor favors transfer from this District to the WDWA or is neutral. The Court should alternatively transfer the case to the WDWA.


DATED: March 21, 2022                    Respectfully Submitted,

                                         By: */s/ Robert W. Unikel*
                                         Robert W. Unikel (*Pro Hac Vice*)
                                         robertunikel@paulhastings.com
                                         John A. Cotiguala (*Pro Hac Vice*)
                                         johncotiguala@paulhastings.com
                                         Daniel J. Blake (*Pro Hac Vice*)
                                         danielblake@paulhastings.com
                                         PAUL HASTINGS LLP
                                         71 South Wacker Drive, Suite 4500
                                         Chicago, IL 60606
                                         Telephone: (312) 499-6000
                                         Facsimile: (312) 499-6100

                                         Robert R. Laurenzi (*Pro Hac Vice*)
                                         robertlaurenzi@paulhastings.com
                                         PAUL HASTINGS LLP
                                         200 Park Avenue
                                         New York, NY 10166
                                         Telephone: (212) 318-6000
                                         Facsimile: (212) 319-4090

                                         Matthias A. Kamber
                                         matthiaskamber@paulhastings.com
                                         Kelsey McQuilkin (*Pro Hac Vice*)
                                         kelseymcquilkin@paulhastings.com
                                         PAUL HASTINGS LLP
                                         101 California Street, Forty-Eighth Floor
                                         San Francisco, CA 94111
                                         Telephone: (415) 856-7000
                                         Facsimile: (415) 856-7100

                                         Raymond W. Stockstill (*Pro Hac Vice*)
                                         beaustockstill@paulhastings.com
                                         PAUL HASTINGS LLP
                                         695 Town Center Drive, Seventeenth Floor
                                         Costa Mesa, CA 92626
                                         Telephone: (714) 668-6200
                                         Facsimile: (714) 979-1921

Paige Arnette Amstutz
State Bar No.: 00796136
pamstutz@scottdoug.com
SCOTT, DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

*Counsel for Defendants Google LLC
and YouTube, LLC*

### CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for Defendants Google LLC and YouTube, LLC conferred in a good-faith effort on March 17, 2022, to resolve the matter presented herein and was advised that counsel for Plaintiffs The Receivership Estate of AudienceScience Inc. and Revitalization Partners, L.L.C. opposes this motion on the grounds that a transfer pursuant to 28 U.S.C. § 1404(a) is not appropriate under the circumstances.

*/s/ Robert W. Unikel*
Robert W. Unikel

### CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Robert W. Unikel*
Robert W. Unikel